| Case No. | 16-CR-00741-CAS - 2 | Date | May 13, 2019 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | (SPANISH) – F. Javier Villalobos | | |

| Catherine Jeang | Laura Elias | Jason Pang |
|---|---|---|
| *Deputy Clerk* | *Court Reporter / Recorder, Tape No.* | *Assistant U.S. Attorneys* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond. | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Miguel Angel Carrillo Garcia | X | X | | William Harris | X | | X |

**Proceedings:** DEFENDANT MIGUEL ANGEL CARILLO GARCIA'S MOTION TO SUPPRESS DIGITAL EVIDENCE (Dkt. [ 117 ], filed March 12, 2019)

## I. INTRODUCTION

On October 20, 2016, a grand jury returned a two-count indictment against Miguel Angel Carrillo Garcia ("defendant") and his cousin, Jose Eduardo Carrillo ("Carrillo"), charging them with (1) conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846, and (2) possession, or aiding and abetting possession, with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(l ), 84l(b)(l)(C) and 18 U.S.C. § 2(a). Dkt. 13. Defendants were indicted after the Los Angeles Sheriffs Department ("LASD") seized roughly 9 kilograms of methamphetamine, during a traffic stop, contained in a duffel bag found in a vehicle driven by Carrillo on the Interstate Highway-5 ("I-5"). Id. Defendant, who owned the vehicle, was in the vehicle when police initiated the traffic stop and found the methamphetamine. Defendant's trial is scheduled for September 24, 2019.

On March 12, 2019, defendant filed the above-captioned motion to suppress digital evidence, seized from defendant's cell phone, pursuant to a search warrant. Dkt. 117 ("Mot."). The government filed an opposition to defendant's motion on April 1, 2019, and included a copy of the search warrant, which was issued on October 4, 2016. Dkt. 122 ("Opp'n"). On April 8, 2019, defendant filed a reply. Dkt. 125 ("Reply").

On April 23, 2019, at the request of defense counsel, the Court continued the hearing on this motion to May 13, 2019. Dkt. 128. Counsel requested a continuance because, on April 18, 2019, the Los Angeles Office of the Inspector General published a report on the activities of the Domestic Highway Enforcement Team (DHET), which concluded that "DHET practices had a

constitutionally troubling impact on Latino drivers." Dkt. 130, Ex. 1 ("OIG Rept.") at 40. Defendant is Latino, and DHET conducted the traffic stop at issue in this case. The Court also granted defense counsel's request to provide supplemental briefing. Thereafter, defendant filed a supplemental memorandum on May 2, 2019, ("D. Supp."), and the government filed a supplemental memorandum on May 8, 2019, ("Gov't Supp.").

The Court held a hearing on May 13, 2019. After carefully considering the parties' arguments, the Court finds and concludes as followed.

## II.     BACKGROUND

### A.     Defendant's Arrest

LASD Deputy Mike Vann ("Deputy Vann") searched defendant's vehicle on September 20, 2016, after initiating a traffic stop. At the time of the traffic stop, defendant was asleep in the passenger seat of his vehicle as his cousin, Carrillo, drove north on I-5. Mot. at 3. Defendant owned the vehicle and consented to Deputy Vann's request to search it. Id. Deputy Vann then found marijuana and cocaine, in amounts consistent with personal use, in the front console of the vehicle. Id. at 3–4. On the back seat, Deputy Vann recovered 9 kilograms of methamphetamine, including packaging, which was contained in a closed, black duffel bag. Id. at 4. He also recovered two cell phones, one belonging to defendant, the other to Carrillo. Id.

Deputy Vann arrested both individuals and transported them to the Santa Clarita Sheriff's Station. At the station, both defendant and Carrillo gave statements, independent of one another, that the methamphetamine belonged to Carrillo and that defendant was unaware that it was in the vehicle.[1] Specifically, when Deputy Vann inquired about the owner of the drugs, Carrillo stated, "they were mine." When Deputy Vann then asked, "you're not just taking the rap?", Carrillo shook his head and said, "that is what I am going to say, he doesn't have to be here bro." Opp'n at 5 (citing Dkt. 89 ("Jan. Order") at 4). Carrillo then signed a "Waiver of Miranda Warnings" form, and wrote that, "My cousin dont know nothing about this. I know about what was on the car. (Dash Drugs) [sic]." Mot., Ex. D. In a declaration, Carrillo averred that he made his statement after Deputy Vann and another officer walked passed Carrillo's jail cell and made several comments—including (1) that the drugs had to belong to one of them, (2) that the judge would treat them better if one of them made a statement, and (3) that if one of them took responsibility for the drugs and said his cousin did not know anything about them, they would let the other go. Dkt. 36-1, Declaration of Jose Eduardo Carrillo ("Carrillo Decl.")

---

[1]     Although the cousins gave their statements separately, the government contends that they were in the same holding area before they spoke with the officers, which would have permitted them to speak to one another. Affidavit ¶ 15(d). Defendant calls any suggestion that defendants may have concocted a story "mere speculation." Mot. at 10.

¶ 6.  Defendant also signed a <u>Miranda</u> waiver form, stating that he "d[id]n't know nothing about the problem."  Mot., Ex. C.

On October 4, 2016, following the arrest, Drug Enforcement Agency ("DEA") Special Agent Robert R. Thomas ("SA Thomas") submitted an affidavit requesting the issuance of a warrant to search the cell phones of Carrillo and defendant, which were both recovered from defendant's vehicle.  Mot. at 4; <u>see</u> Opp'n, Ex. 1 ("Affidavit").  As defendant acknowledges, SA Thomas' affidavit noted the following facts:

(1) Defendant was seated in the front passenger seat when the Acura was stopped;

(2) Defendant appeared to be nervous and fiddled with the car stereo buttons.  He also dropped papers and was allegedly "shaking uncontrollably" when Deputy Vann approached them;

(3) Defendant told Deputy Vann that he owned the Acura and that he had purchased it three days earlier;

(4) Defendant said that he and Carrillo had come from the Morongo Casino in Cabazon and then Pasadena, and that they were headed back to their homes in San Jose.  In contrast, Carrillo stated that they were returning to San Jose after driving his girlfriend to Los Angeles;

(5) Defendant said that he had a small amount of marijuana in the Acura, and showed Dep. Vann a medical marijuana card.  Deputy Vann also reported smelling marijuana;

(6) Upon questioning by Deputy Vann, and before Deputy Vann searched the vehicle, defendant denied knowledge of any methamphetamine in his vehicle.  Defendant also stated that there was no cocaine in the vehicle, but Deputy Vann later found some in the front console;

(7) After Carrillo declined to agree to a search, indicating that it was defendant's car, defendant consented to a search of his vehicle;

 (8) At a post-arrest interview, defendant said that the methamphetamine found in the duffel bag on the back seat was not his, and that he didn't know how it had gotten into the Acura;

(8) At a post-arrest interview, Carrillo told the arresting officers: (1) that defendant had nothing to do with the methamphetamine, (2) that defendant should therefore be released, (3) that defendant had only given Carrillo a ride in his Acura, and (4) that defendant was asleep when the Acura was pulled over;

> (10) Video surveillance showed that defendant reacted visibly, swore, and hung his head when Deputy Vann found the methamphetamine contained in the duffel bag.

See Mot. at 4–5; Affidavit at ¶¶ 10–16.  Based on his training and personal experience as a DEA agent, SA Thomas also provided a statement pertaining to the regular use of cell phones by drug traffickers.  Id. at 12–16.

The Honorable Steve Kim (the "Magistrate Judge") issued the warrant to search defendant's cell phone on October 4, 2016, the same day that SA Thomas submitted his affidavit.  Id.  The government subsequently recovered text messages from defendant's cell phone, which the government intends to offer into evidence at trial.

### B.   Procedural History

On August 8, 2017, Carrillo filed a motion to suppress (1) all evidence seized as a result of the traffic stop on September 20, 2016 and (2) statements made by Carrillo while in the custody of LASD.  Dkt. 36.  Carrillo argued that Deputy Vann lacked reasonable suspicion to conduct the initial traffic stop and to prolong the stop until he obtained defendant's consent to search the vehicle.  Id.  Carrillo also contended that his subsequent statements at the LASD station were made without full advisement of his Miranda rights and were involuntary.  Id.  On January 25, 2018, the Court granted in part and denied in part Carrillo's motion.  Jan. Order at 9.  After finding (1) that Deputy Vann had reasonable suspicion to stop the vehicle based on violations of the California Vehicle Code, and (2) that the stop was not unreasonably prolonged, the Court declined to suppress evidence seized as a result of the traffic stop.  Id. at 7.  However, the Court found that the government could not introduce, in its case-in-chief, statements made by Carrillo after his arrest while in custody because there was insufficient evidence that Carrillo was either fully advised of his Miranda rights or waived those rights before he made the incriminating statements.  Id. at 8.  The Court reserved ruling on whether the statements could be offered for any purpose at trial; the Court found that the record was insufficient to make a determination as to whether Carrillo's statement was involuntary under the totality of the circumstances.  Id. at 9.

On October 25, 2018, defendant filed a motion to sever his trial from Carrillo's trial.  Dkt. 104.  Defendant argued that he would be prejudiced by a joint trial because he would be unable to introduce the Miranda waiver signed by Carrillo in which Carrillo states that he knew about the drugs recovered from the vehicle and defendant did not.  Id. at 3.  The Court granted defendant's motion on November 26, 2018.  Dkt. 113.

Defendant now moves to suppress the digital evidence seized from his cell phone.

## III. LEGAL STANDARD

### A. The Warrant Requirement

The Warrant Clause of the Fourth Amendment "provides that a warrant may be issued only 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" United States v. Artis, No. 18-10246, 2019 WL 1375260, at *3 (9th Cir. Mar. 27, 2019) (quoting U.S. Const. Amd. IV). "A search warrant is supported by probable cause if the issuing judge finds that, 'given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Underwood, 725 F.3d 1076, 1081 (9th Cir. 2013) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a 'commonsense, practical question.'" United States v. Kelley, 482 F.3d 1047, 1050 (9th Cir. 2007) (quoting United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc)). "Neither certainty nor a preponderance of the evidence is required." Id.

"A magistrate judge's finding of probable cause is entitled to great deference." United States v. Clark, 31 F.3d 831, 834 (9th Cir. 1994); see also Gourde, 440 F.3d at 1069 ("We are not in a position to flyspeck the affidavit through de novo review.... This deferential approach is the antithesis of a 'grudging or negative attitude' toward search warrants and a 'hypertechnical rather than a commonsense' analysis." (citations omitted)); United States v. Wong, 334 F.3d 831, 835–836 (9th Cir. 2003) ("We review a magistrate judge's finding of probable cause to issue a search warrant for clear error."). Still, "[a] reviewing court should find that probable cause is not met when the issuing judge lacked a 'substantial basis for ... conclud[ing] that probable cause existed.'" Underwood, 725 F.3d at 1081 (brackets in original; internal quotation marks omitted) (quoting Gates, 462 U.S. at 238–39). "Conclusions of the affiant unsupported by underlying facts cannot be used to establish probable cause." Id. The supporting affidavit or declaration "must recite underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions; it is these facts that form the central basis of the probable cause determination." Id. "Under the totality of the circumstances test," however, "otherwise innocent behavior may be indicative of criminality when viewed in context." United States v. Chavez–Miranda, 306 F.3d 973, 978 (9th Cir. 2002). "Additionally, issuing judges may rely on the training and experience of affiant police officers." Id.

### B. An Officer's Good Faith Reliance

Evidence obtained pursuant to a facially valid search warrant, later found to be invalid, is admissible if the executing officers acted in good faith and in objectively reasonable reliance on the warrant. United States v. Leon, 468 U.S. 897, 922 (1984). The "good faith test is an objective one," through which a court "ask[s] not what the executing officer believed, or could

have believed, but 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Luong, 470 F.3d 898, 902 (9th Cir. 2006) (quoting Leon, 468 U.S. at 922). This inquiry is limited to the four corners of the affidavit given in support of the warrant. Id. at 904. That affidavit "must establish at least a colorable argument for probable cause." Id. at 903; see Leon, 468 U.S. at 926 (framing the inquiry as whether the affidavit is "sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause").

"'[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate [judge] normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" Leon, 468 U.S. at 922. But "the Supreme Court has identified at least four situations in which reliance on a warrant cannot be considered objectively reasonable, and therefore the good faith exception cannot apply:

> (1) when the affiant knowingly or recklessly misleads the judge with false information; (2) when the judge wholly abandons his or her neutral role; (3) when the affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that executing officers cannot reasonably presume it to be valid (i.e., it fails to specify the place to be searched or the things to be seized).

Luong, 470 F.3d at 902 (citing Leon, 468 U.S. at 914, 923). "The government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable." United States v. Michaelian, 803 F.2d 1042, 1048 (9th Cir.1986).

## IV.    DISCUSSION

"To establish a Fourth Amendment violation . . . defendant[] must succeed in showing either that the warrants were invalid under the Fourth Amendment or that, even if valid, the warrants were executed in a manner that rendered the searches unreasonable." Artis, No. 18-10246, 2019 WL 1375260, at *2. Defendant argues that the digital evidence seized from defendant's cell phone should be suppressed because the warrant issued by the Magistrate Judge was not supported by probable cause. Mot. at 9. Moreover, defendant contends that, not only was the warrant not supported by probable cause, but that the officer's subsequent reliance on the warrant was unreasonable, rendering an exception for good faith reliance inapplicable. Id. at 12 ("SA Thomas's warrant affidavit so thoroughly lacked probable cause as to [defendant's] cell phone that it was objectively unreasonable for officers to have relied on it.").[2]

---

[2]    Defendant initially argued that a form he signed on September 20, 2016, while in custody at the sheriff's station, could not legally permit law enforcement to search his cell phone

**CRIMINAL MINUTES – GENERAL     'O'**

With regard to the Magistrate Judge's decision to issue the warrant to search Garcia's phone, defendant contends that the Magistrate Judge failed to distinguish between Carrillo and defendant.[3] In making this argument, defendant emphasizes the different behaviors of Carrillo and defendant, as well as the significance of the post-arrest statements, made by defendant and Carrillo, wherein both stated that the methamphetamine was Carrillo's and that Garcia was ignorant of it. "Carrillo told the arresting officers that the methamphetamine in the black duffel bag was his and that Garcia had no knowledge of its presence in the Acura. Carrillo's self-inculpatory statement was plausible and there was no reason for Judge Kim to dismiss it." Mot. at 9–10. Importantly, defendant nowhere suggests that law enforcement provided false information to the Magistrate Judge, nor that law enforcement withheld relevant details. The Court has reviewed SA Thomas' affidavit, and finds that the cousins' statements were clearly presented to the Magistrate Judge. See Affidavit ¶ 15. Still, defendant suggests that the Magistrate Judge undervalued the significance of the post-arrest statements. "Deference to Judge Kim's probable cause finding is not unlimited. In this case, Judge Kim dismissed Carrillo's confession and exoneration of Garcia, and he failed to distinguish between the two cousins. That failure was, as to Garcia, an improper analysis of the totality of the circumstances." Id. at 11. Citing Williamson v. United States, 512 U.S. 594, 599 (1994), defendant argues that Carrillo's self-inculpatory statement should have been deemed credible, mot. at 10. Citing United States v. Artis, No. 18-10246, 2019 WL 1375260 (9th Cir. Mar. 27, 2019), defendant further contends that his mere association with Carrillo did not provide probable cause to search his cell phone, reply at 7. Finally, in defendant's supplemental brief, submitted to the Court after defendant reviewed the OIG Report, defendant argues that the Magistrate Judge relied on "Dep. Vann's criminal profiling analysis which has now been criticized." D. Supp. at 8. In particular, defendant contends that Judge Kim improperly relied on information that defendant acted nervously after Deputy Vann stopped his vehicle. Id.

The Court finds that the Magistrate Judge did not commit clear error when he concluded that probable cause supported the issuance of a warrant to search defendant's cell phone. "Whether there is a fair probability depends upon the *totality of the circumstances*." Kelley,

---

because the form was "defective on its face." Mot. at 7. Although defendant signed the form, he did not complete the section of the form which would have indicated whether he had been advised of his rights, and whether he gave permission voluntarily. See Mot., Ex. B. In response, the government represents that it does not rely on defendant's written consent, and argues that the warrant "more than adequately justifies the search of defendant's phone." Opp'n at 5, n.1. Because the government represents that it relies exclusively on the warrant, which was not predicated on the consent form, as the basis for the government's search, the Court will not reach the question of the validity of the consent form.

[3] Defendant concedes that probable cause supported the issuance of a warrant to search Carrillo's cell phone. Id. at 11.

482 F.3d at 1050 (emphasis added).  In light of the fact that marijuana and cocaine found in the vehicle, along with the methamphetamine in Carrillo's duffel bag, the fact that the vehicle was owned by defendant, the fact that defendant and his cousin told Deputy Vann different stories as to the nature of their trip, and the fact that defendant lied about his possession of cocaine, the Court finds that Carrillo's self-inculpatory statements did not summarily bar a finding of probable cause.  More to the point, the Court cannot conclude that "the issuing judge lacked a 'substantial basis for ... conclud[ing] that probable cause existed.'"  Underwood, 725 F.3d at 1081.

This case is clearly distinguishable from Artis, where the Ninth Circuit found that a defendant's close association with an individual who was the target of outstanding warrants for arrest did not necessarily support a finding of probable cause to search the defendant.  No. 18-10246, 2019 WL 1375260, at *6.  Unlike the case here, the Artis defendant was neither arrested in the presence of his associate, nor was he arrested after the police discovered contraband in his presence.  United States v. Paguio, 114 F.3d 928 (9th Cir. 1997), which defendant also cites, is similarly inapposite.  There, the Ninth Circuit reversed the defendants' conviction because the district court improperly excluded out-of-court, exculpatory statements provided by the defendants' family member.  Id. at 935.  In contrast, here, law enforcement presented both defendant and Carrillo's statements to the Magistrate Judge.  However, considering the "totality of the circumstances," the Magistrate Judge still found that there was probable cause to search defendant's cell phone.

Furthermore, certain attributes of Carrillo's statements diminish their credibility.  First, Carrillo himself averred that he asserted his cousin's alleged innocence only after Deputy Vann and his colleague indicated that if one defendant accepted accountability, the other would be released.  Carrillo Decl. ¶ 6.  Additionally, when Deputy Vann expressly asked Carrillo "you're not just taking the rap?", Carrillo shook his head and vaguely responded "that is what I am going to say, he doesn't have to be here bro."  Jan. Order at 4.  Finally, the Ninth Circuit has held that, "the exculpatory statements of family members 'are not considered to be highly reliable,'" given altruistic motives.  United States v. Gadson, 763 F.3d 1189, 1200 (9th Cir. 2014) (quoting LaGrand v. Stewart, 133 F.3d 1253, 1268 (9th Cir. 1998)).  Accordingly, notwithstanding the fact that Carrillo's statement was self-inculpatory, there were still reasons the Magistrate Judge may have questioned its credibility.

The Court has also reviewed the OIG Report and finds that the findings and conclusions contained therein do not indicate that the warrant was issued without probable cause.  As a preliminary matter, the report addresses protocols pertaining to pretextual traffic stops initiated by law enforcement; it does not discuss the procedures for obtaining a warrant.  Additionally, SA Thomas' affidavit admittedly alleged that defendant displayed signs of anxiety, see affidavit ¶ 12(b), a criminal profiling factor which the OIG Report calls into question, see OIG Rept. at 8

("[I]dentifying motorists who look either too nervous or too calm involves a subject assessment that gives a deputy complete discretion to pull over a person for a factor that may mean nothing."). However, the affidavit also included numerous other details, discussed above, about defendant's conduct which evidence probable cause; in fact, the affidavit primarily discusses defendant's conduct, and the items that were found in his vehicle, after defendant consented to a search of his vehicle.

Finally, even if the warrant issued by the Magistrate Judge were not supported by probable cause, the affidavit certainly contains facts establishing a "colorable argument" for probable cause and therefore the good-faith exception would preclude suppression of evidence in this case. Leon, 468 U.S. at 922. None of the four situations recognized in Luong are at issue here. See Luong, 470 F.3d at 902. Given the numerous indications that defendant was associated with the contraband found in his vehicle— each presented to the neutral magistrate— an officer would reasonably have presumed the warrant issued to be valid.

## V.     CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendant's motion to suppress the digital evidence seized from his cell phone, pursuant to a search warrant.

IT IS SO ORDERED.

|  | 00 | : | 16 |
| Initials of Deputy Clerk | | CMJ | |